# Tatum *v.* The State.

*Prosecution for Wantonly Killing Hog.*

1, *Amendment of statement.*—In a prosecution for a misdemeanor, commenced in the County Court, and transferred to the Circuit Court at the instance of the defendant (Code, §§ 4702, 4724-9), the "statement of the cause of complaint" which the solicitor is required to make, and which is analogous to an information at common law, may be amended, by leave of the court, by averring the time of the commission of the offense, if such averment be material.

2. *Wanton or unlawful injury to domestic animal.*—Under the statute declaring a person guilty of a misdemeanor "who unlawfully or wantonly kills, disables, disfigures, destroys or injures any horse," or other domestic animal particularly name , Code, § 4409), unlike the preceding section (4408), which relates to malicious injury to animals, malice towards the owner is not an ingredient of the offense: the statute is aimed against intentional acts, unlawfully or wantonly done, from which injury to the animal results, although there may not have been a specific intent to kill, disable, or injure it.

FROM the Circuit Court of Macon.

Tried before the Hon. JAMES E. COBB.

The prosecution in this case was commenced on the 26th June, 1880, by an affidavit made and subscribed by Nat. Renfro, before the judge of probate of said county, which stated that "the crime of unlawfully or wantonly killing or injuring, disabling or disfiguring a hog, of the value of fifteen dollars, the property of affiant, has been committed, and that, in the opinion of affiant, Ephraim Tatum is guilty"; and a warrant was thereupon issued by said probate judge, as *ex-officio* judge of the County Court, for the arrest of said Tatum to answer the charge. On the trial in the County Court, the defendant was convicted, and fined twenty dollars; from which judgment he took an appeal to the Circuit Court, where the solicitor filed a complaint, or statement of the cause of the prosecution, in these words: "The State of Alabama, by its solicitor, complains of Ephraim Tatum, that he wantonly and unlawfully killed, disabled, disfigured, destroyed or injured one hog, of the value of fifteen dollars, the personal property of Nathaniel Renfro, the amount of the injury to said hog being the sum of fifteen dollars." The defendant demurred to this statement, "because it does not aver that the offense was committed within twelve months before the commencement of this prosecution"; and the court then permitted an amendment of the statement, by adding

(30)

that averment to it; to which ruling an exception was reserved by the defendant.

"On the trial," as the bill of exceptions states, "there was evidence on behalf of the State tending to show that the defendant was getting the hog alleged to have been killed, &c., out of his field, and that his effort to get the hog out of his field resulted in the injury or death of the hog; some of the evidence tending to show that the defendant used unnecessary force, and thereby caused the death or injury of the hog. The admissions of the defendant, offered by the State, were, that he was getting the hog out of his field; that the hog got in a ditch, and turned towards his son, who struck it with a hoe, and that he (defendant) threw it out on the side of the ditch. The defendant asked the following charges, which were in writing: 1. 'The defendant must, at the time of the injury or killing, if there was any injury or killing, have entertained the criminal intent to injure or kill said property unlawfully or wantonly.' 2. 'There can not be any conviction in this case, under the statute, unless the defendant entertained the criminal intent to unlawfully kill or injure said property.' 3. 'If the only intention of the defendant was simply to get the hog out of his field, and the hog died in consequence of said effort, the defendant is not guilty, unless he employed undue means to get the hog out, or was reckless or careless as to whether he killed or injured the hog.' The court refused each of these charges, and the defendant excepted to the refusal of each separately."

W. C. BREWER, and W. C. McIVER, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

BRICKELL, C. J.—The County Court had original jurisdiction of the offense with which the prisoner was charged. The accusation against him, in that court, consisted of the complaint made by the informer, or the prosecutor, which was sufficient, if by name it designated the offense.—Code of 1876, § 4702. On appeal to the Circuit Court, the cause was triable *de novo*, and no objection could be made to any inaccuracy or imperfection in the proceedings before the County Court.—Code of 1876, §§ 4722, 4729.

In the Circuit Court, it was the duty of the solicitor to make a brief statement of the cause of complaint, which was in the place of a presentment, or of an indictment. Whether the statement originally filed was demurrable, because it did not precisely conform to the form laid down in the statute, and omitted all allegation of the time of committing the

[Tatum v. The State.]

offense, may well be doubted. But it was so ruled by the Circuit Court; and whether the defect could be cured by amendment, is the question presented. The statement of the cause of complaint is the act and pleading of the solicitor, the prosecuting officer of the State. It is his suggestion, or information to the court, in the name of the State, and upon his official responsibility. In its nature and characteristics, it bears a close analogy to the information of the common law. While an indictment, the accusation of a grand jury, made upon their oath, was incapable of amendment, an information stood upon different grounds; it was amendable, by leave of the court, before and during the trial, if a new and different case was not introduced.—1 Bish. Cr. Pr. § 714. We think the Circuit Court had the power to direct an amendment of the complaint, relieving it from the objections taken by the demurrer.

The statute on which the accusation is founded, is not directed against malicious mischief, or malicious injuries to property. The preceding section of the Code is aimed at injuries of that kind; and this section, at wanton or unlawful injuries to certain domestic animals. Of this offense, malice is not an element. If the wrong done was malicious—if it was with the intent to injure the owner of the animal, it would be of the class of injuries enumerated in the preceding section. Under this section, it is enough that the injury is inflicted *unlawfully*—in violation of, or contrary to law; or *wantonly*—that is, without regard to the rights of the owner. It is not an accidental, or unintentional injury, proceeding from an act not directed against the animal, the statute denounces. But it is an injury proceeding from an *unlawful*, or *wanton* act, directed against the animal, though there may not be a specific intent to destroy, disable, disfigure, or injure it. It is against intentional acts, *wanton* or *unlawful*, from which injury to the animal results, though the injury may not have been contemplated or intended, the statute is directed. The several charges requested were in conflict with this construction of the statute, and were properly refused.

The judgment is affirmed.