PER CURIAM.
The appellant, H.N.P., was charged in a delinquency petition with disorderly conduct. After a hearing, the juvenile court adjudged her delinquent, placed her on probation and ordered her to write letters of apology to the El Palacio Mexican restaurant and Tim Byrd.
At the adjudication hearing, Deputy Sheriff Tim Byrd testified that, at approximately 6:30 or 7:00 p.m. on October 16, 2001, he and his family were having dinner at El Palacio Mexican restaurant in Ozark. H.N.P. and a companion were seated across the room. Byrd saw H.N.P. talking on her cellular phone and heard her say, in a voice that was clearly audible, that someone had “showed their a — .” He also heard her say “motherf — er” and “f — .” Byrd stated that 16 to 18 other people were in the restaurant and that some of them were elderly or very young. When Byrd realized that people were becoming embarrassed, he told H.N.P. not to speak like that in a public place. She lowered her voice but then “flipped him off’ when she later walked past him. The people seated next to H.N.P. told Byrd that she had continued to use obscene language after he spoke to her, but she had spoken so that he could not hear. H.N.P. testified in her own behalf; she stated that she had been discussing a quarrel she had previously had with her sister. She admitted saying that her sister “showed her a — ” but denied using any other “cuss words.” She also denied making any obscene gestures.
H.N.P. contends that the evidence was insufficient to support the court’s finding of disorderly conduct. She argues that the words at issue were not “fighting words” because they were used over a telephone and could not have provoked physical retaliation. She further argues that the *632 words were not calculated to cause an immediate breach of the peace.
Section 13A-11-7, Ala.Code 1975, provides, in pertinent part:
“(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
“(3) In a public place uses abusive or obscene language or makes an obscene gesture.... ”
The words “abusive or obscene language” and “obscene gesture” in § 18A-11-7 have been narrowly interpreted to apply “ ‘only to “fighting words.” ’ ” Robinson v. State, 615 So.2d 112, 113 (Ala.Crim.App.1992), quoting Swann v. City of Huntsville, 455 So.2d 944, 950 (Ala.Crim.App.1984).
“Fighting words” are “personally abusive epithets which, when addressed to the ordinary citizen are, as a matter of common knowledge, likely to provoke violent reaction.” Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). “[Fighting words] by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace.” Skelton v. City of Birmingham, 342 So.2d 933, 936-37 (Ala.Crim.App.), remanded on other grounds, 342 So.2d 937 (Ala.1976). “ ‘The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight.’ ” Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (quoting State v. Chaplinsky, 91 N.H. 310, 18 A.2d 754, 762 (1941)).
Here, H.N.P.’s words could not cause the addressee to fight because they were not directed to anyone in the restaurant. There also was no evidence indicating that Deputy Byrd or anyone else in the restaurant had been tempted to intervene physically on the addressee’s behalf. “It is not enough [that words] merely arouse anger or resentment.” Skelton v. City of Birmingham, 342 So.2d at 937. They “ ‘must be sufficiently offensive to raise a probability of physical retaliation by the addressee or someone acting in his interest.’ ” B.E.S. v. State, 629 So.2d 761, 765 (Ala.Crim.App.1993), quoting A.L.I. Model Penal Code § 250.4 at 365-66 (1980). Compare James M. v. State, 111 N.M. 529, 807 P.2d 227 (1991)(“fighting words” where defendant flailed his arms and repeatedly yelled “f — you” at another civilian, both parties were upset, and crowd had gathered to watch).
With regard to H.N.P.’s gesture to Deputy Byrd, it was vulgar and offensive but insufficient to constitute “fighting words.” “ ‘The fact that [a police] officer encounters ... vulgarities with some frequency, and the fact that his training enables him to diffuse a potentially volatile situation without physical retaliation, ... means that words which might provoke a violent response from the average person do not, when addressed to a police officer, amount to “fighting words.” ’ ” Robinson v. State, 615 So.2d at 114. See B.E.S. v. State, supra (“F — [you]” not fighting words when spoken to police officer).
Because the State failed to prove that H.N.P. used “fighting words,” the adjudication of delinquency must be reversed and a judgment rendered in H.N.P.’s favor.
REVERSED AND JUDGMENT RENDERED.
McMILLAN, P.J., and BASCHAB and SHAW, JJ., concur.
COBB, J., dissents, with opinion.
WISE, J., joins dissent.